[L. A. No. 3425.    In Bank.—August 20, 1913.]

## PASADENA SCHOOL DISTRICT et al., Appellants, v. CITY OF PASADENA, Respondent.

School District—Inclusion Within Limits of Municipality—Subject to Municipal Building Regulations—Police Power.—A municipal corporation, in the exercise of its police power, has the power to subject a school district erecting a school building within its corporate limits, but which also constitutes territory of the school district, to its regulatory building ordinances and building code.

Id.—Extent of Police Power of Municipalities.—Under section 11 of article XI of the state constitution, a municipal corporation is vested with authority to make any such reasonable local police regulations as its legislative body may deem advisable, controlled only by the limitation that they must not conflict with any general laws enacted by the legislature on the subject.

Id.—Authority of Trustees of School District not Paramount.— The fact that the school district is an independent governmental agency of the state created under the general law embodied in chapter III of title IV of the Political Code, which invests its trustees with the general control and management of all school property within the district, and gives them the particular authority to plan and erect school buildings, does not exempt it from being subject to be controlled in the exercise of its powers by the police regulations of a municipality purporting to apply to school districts in constructing buildings on its territory embraced within the municipal limits.

ID.—SCHOOL DISTRICTS ARE WITHOUT POLICE POWER.—Such general and particular authority conferred on the trustees of school districts does not carry with it, by implication, full police power as to all matters pertaining to the erection of school buildings.

ID.—LIMITED POWERS OF SCHOOL DISTRICTS.—School districts are *quasi* municipal corporations of the most limited power known to the law. Their trustees have special powers and cannot exceed the limit.

ID.—AUTHORITY OF STATE TO CONTROL ERECTION OF SCHOOL BUILDINGS.— While the state might provide, in the exercise of its police power and under a general law, for a complete system of regulation for the protection of the public health, safety, and comfort in the erection of school buildings, it has not done so. In the absence of such state regulation, the municipal regulations control, and a school district desiring to erect a school building within the municipal territory, though it is likewise school district territory, must submit to its building code and ordinances and comply with their requirements.

APPEAL from a judgment of the Superior Court of the County of Los Angeles. Frank G. Finlayson, Judge.

The facts are stated in the opinion of the court.

N. W. Bell, and W. S. Wright, for Appellants.

William J. Carr, James S. Bennett, City Attorney, and John Munger, Assistant City Attorney, for Respondent.

LORIGAN, J.—In an agreed case between the Pasadena School District and the city of Pasadena submitted in the superior court of Los Angeles County under section 1138 of the Code of Civil Procedure, judgment was entered in favor of the city and the school district appeals.

The Pasadena School District embraces all the territory within the limits of the city of Pasadena and a large extent of contiguous territory. The city is a municipal, the school district a *quasi* municipal corporation; each is a political governmental agency, and both distinct corporate entities.

The city adopted a certain ordinance establishing an elaborate building code under which buildings to be constructed in the city are classified, fire districts established, and which provides that only certain classes of buildings shall be erected in certain fire districts. Other ordinances provide for the inspection of plumbing construction and electrical wiring and

equipment of buildings, the issuance of permits, and the payment of fees to the city inspectors therefor, and it is made unlawful to commence the erction of any building or structure in the city (other than those erected by the United States) unless plans and specifications of the proposed building are submitted to the building inspector of the city and his permit for the erection thereof is first obtained and the requisite fees paid.

The school district was proceeding to erect a concrete and steel school building in the school district within the city of Pasadena at a cost of about four hundred thousand dollars without having submitted any plans or specifications or obtaining any permit or paying any fees to the city as provided for in said building code and ordinances. Thereupon the city threatened to arrest and prosecute the school trustees of the district and their builder and contractor. The school district claiming that it was not at all subject to the building regulations of the city and the city insisting that it was, this agreed case was made to settle that question.

In this controversy the only question for solution is one of power—Has the city of Pasadena the power to subject the school district erecting a school building within its corporate limits but which also constitutes territory of the school district, to its regulatory building ordinances and building code in the exercise of its police power?

Under the constitution of this state (art. XI, sec. 11) power is conferred upon every county, city, town, or township to make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws.

Under this constitutional provision the city of Pasadena is vested with authority to make any such reasonable local police regulations, as its legislative body may deem advisable, controlled only by the limitation that they must not conflict with any general laws enacted by the legislature on the subject. As said in *Ex parte Campbell,* 74 Cal. 20, 26, [5 Am. St. Rep. 418, 15 Pac. 318] : ''Section 11 of article XI is itself a charter for each county, city, town and township in the state as far as its local regulations are concerned; and nothing less than a positive and general law upon the same subject can

be said to create a conflict within the meaning of that section.''

The sole contention of the appellant school 'district is that it is an independent governmental agency of the state created under a general law which invests its trustees with the control and management of all school property within the school district, and, hence it is insisted that its authority in that respect is conferred by such general law and the district is not subject to be controlled in the exercise of its powers by the police regulations of a municipality purporting to apply to school districts in constructing buildings on its territory embraced within the municipal limits.

This claim is particularly based upon the provisions of the Political Code adopting a uniform plan for a public school system as found in title III of chapter III, thereof. The sections therein contained, as far as are pertinent to this inquiry, provide for the management and control of school property within school districts by the trustees or boards of education thereof; grants such school authorities the power to build school houses by vote of the district or under a bond issue; and requires the county superintendent of schools except in incorporated cities having boards of education to approve all plans for school houses and to enable him to do so all boards of trustees before adopting any plan for school buildings must submit the same to the county superintendent for his approval.

Under these enactments appellant contends that in harmony with the constitutional provision requiring the legislature to provide for a system of common schools it has created a scheme of complete government respecting school affairs to the extent of vesting in the trustees of such districts power to locate, devise plans for and build school houses and provide for their equipment, which necessarily confers the right to exercise the police power in the construction of such buildings, and is a general law on the subject, with the exercise of which by the school trustees, the municipality cannot interfere.

It is not claimed that there is any general law conferring police power upon the trustees of school districts except as it is insisted that these provisions of the Political Code have that effect. Nor as to these code provisions is it claimed that

they expressly give any power to such trustees or enjoin on them the duty of adopting sanitary or building regulations or regulations in the nature of provisions for the public health, comfort, and safety in the construction of school buildings. It is insisted only that under the general power to control school affairs and the particular authority to plan and erect school buildings there is impliedly conferred full police power as to all matters pertaining to the erection of such buildings.

We cannot agree with this view of appellant. School districts are *quasi* municipal corporations of the most limited power known to the law. Their trustees have special powers and cannot exceed the limit. (*Denman* v. *Webster,* 139 Cal. 452, [73 Pac. 139].) Power in the school trustees to determine for themselves all matters concerning the school structures to be erected to the exclusion of the right of the municipality to impose police regulations cannot be implied from a grant solely of power to control school affairs of the district and plan and build school houses. The constitutional right of the municipality to impose reasonable police regulations within its territorial limits, while it may be controlled by a general law, still such law must be, as is said in *Ex parte Campbell,* 74 Cal. 20, [5 Am. St. Rep. 418, 15 Pac. 318, 321], a positive and general law upon that subject. The power conferred on the trustees of the school district to erect school houses is to be taken only as a grant of power to effectually carry out the purpose of their creation. As a public agency of the state the trustees would have no such power unless it was specifically granted. As granted it is no different as a power from what is possessed under the corporation laws of this state by private corporations as far as controlling corporate property and the right to erect structures thereon is concerned, nor different from the right which the owners of land have to control it and erect buildings upon it. The erection of school buildings necessitates the making of plans therefor just the same as it is necessary for private corporations or individuals to prepare them. These latter when their structures are to be erected in the city must prepare their plans therefor according to the building regulations thereof and submit them for inspection to the municipality so that the regulation which the city imposes may be con-

formed to. And as we do not think the provisions of the school law invoked by appellant constitute a general law relieving it from compliance with the building regulations of the city of Pasadena, it was required to submit itself to and be governed by them.

It is claimed by appellant that if the power of the city authorities is sustained, the effect will be to deprive the state of its power through school trustees acting as a public agency of the state to regulate the construction of such buildings for school purposes as the state may desire. No such result will follow nor is it to be apprehended. The state undoubtedly might provide, in the exercise of its police power and under a general law, for a complete system of regulation for the protection of the public health, safety, and comfort in the erection of school buildings. But this it has not done. It was not intended by the legislature, in empowering the trustees of school districts to control school property and erect school houses, that the matter of regulations respecting school buildings should be left to the trustees; that a school district which embraces territory including a densely populated city or where its territory as such is exclusively within the city in which the necessity for building regulations to promote the safety and security of the community is imperative, should not be controlled by the police power of the municipality but might set at naught its regulations and construct a school building in any part of the city it saw fit and of any kind of material or character it chose to and thus in any serious conflagration jeopardize surrounding buildings and the lives of their occupants. While it is of course necessary that the safety and security of pupils should be assured in constructing school buildings, still other equally important interests of the inhabitants of a city are to be consulted. The legislature doubtless recognized that in the matter of police regulations, though it had the power by general law to provide for them in school districts, yet their imposition might be safely left to the public bodies, empowered by section 11 of article XI of the constitution, who would have more particular knowledge of the necessity and extent of imposing them. Different police regulations may be required in different municipalities depending on the density of the population. The mere fact that the school district embraces a part of a

city where building regulations are imperative for public
safety could afford no reasonable excuse why, if it is necessary
to construct a school building in the city, the trustees should
not in the interest of the public good be subject to the same
building regulations as others erecting structures therein are
subjected to.   In promoting the municipal welfare and safety
the school district ought to be subject to them.   The only way
it can be relieved from this would be by a general law on
the subject and as none exists the municipal regulations
control and a school district desiring to erect a school build-
ing within the municipal territory, though it is likewise school
district territory, must submit to its building code and ordi-
nances and comply with their requirements.

The superior court in its conclusions of law from the stip-
ulated facts, and likewise in the judgment, determined that
the school district erecting school buildings within the terri-
torial limits of the city of Pasadena was subject to the
building regulations of the city enacted in the exercise of its
police power except as to one particular,—namely, that it was
not subject to the ordinances of the city relating to and
governing the construction of fire-escapes on school buildings
erected by it two or more stories in height.

This conclusion of the court was reached from a consid-
eration of section 1890 of the Political Code, which provides
that "each school building in the state shall, if two or more
stories in height, be provided with suitable and sufficient
fire-escapes," and that the trustees of the district must pro-
vide them.

If the consideration and construction of this provision was
at all involved in the real controversy between the parties
hereto under the agreed and stipulated facts in the case, we
are not prepared to say that the conclusion of the superior
court respecting its effect upon the ordinances of the city pro-
viding for the character of fire-escapes was correct.   But this
particular matter was not involved.   Appellant was not ques-
tioning the applicability of any particular provision of the
regulatory ordinances of the city; nor that a provision there-
under respecting fire-escapes or any other particular provision
of the ordinances was not binding on the school district.   It
submitted no plans showing whether it had provided for fire-
escapes at all or whether if it had they were different from

or the same as those which the ordinances required. It refused to submit to the city authorities any plans at all or obey any of the regulatory ordinances and was insisting solely that the city was without any power whatever to enact any ordinances respecting building regulations which would apply to or bind the school district in the erection of school buildings within the city. As is set forth in the statement of facts, the controversy and question directly submitted to the court for determination was "concerning the right and power of the city of Pasadena to enforce said ordinances . . . in respect to the construction of said school buildings to the same extent that said ordinances would be enforceable against and in respect to any other building being built by an individual." This was the general and broad question presented under the statement of facts and was all that the court was called upon to decide and its determination should have been confined thereto.

For this reason the judgment of the superior court is modified by striking from the conclusions of law and the judgment as entered below the recitals therein in which it is determined that the school district is not subject to the ordinances of the city respecting the construction of fire-escapes on school buildings of two or more stories in height, and that as so modified the judgment denying the school district an injunction be affirmed.

Angellotti, J., Shaw, J., Melvin, J., Henshaw, J., and Sloss, J., concurred.